UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>    Plaintiff,<br><br>    v.<br><br>WELLNESS SUPPORT NETWORK, INC., ET AL.,<br><br>    Defendants.<br>_____/ | No. C-10-04879 JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS COMPLAINT FILED BY DEFENDANTS WELLNESS SUPPORT NETWORK, INC., ROBERT HELD AND ROBYN HELD [Docket No. 9]** |

## I. INTRODUCTION

Plaintiff Federal Trade Commission ("FTC") brings this action for injunctive relief and other remedies under Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), asserting that Defendants have engaged in false advertising and deceptive practices in connection with their sale of certain dietary supplements, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) & 52. Defendants have filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("the Motion"). The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c). The Court finds that the Motion is suitable for determination without oral argument, pursuant to Civil Local Rule 7-1(b). Accordingly, the hearing set for **April 8, 2011** is **vacated.** For the reasons stated below, the Motion is GRANTED in part and DENIED in part.

## II. BACKGROUND

### A. The Complaint[1]

In the Complaint, the FTC alleges that Defendant Wellness Support Network, Inc. ("WSN") is a closely held California corporation with its principal place of business in Glendale, California. Complaint, ¶ 6. WSN transacts business throughout the United States, including in this District. *Id*. Defendant Robert Held is or has been an owner of WSN and has "formulated, directed, controlled, had the authority to control, or participated in the policies, acts, or practices of WSN, including the acts or practices alleged in [the] complaint." *Id*., ¶ 7. Similarly, Defendant Robyn Held is alleged to be or have been an officer of WSN who has "formulated, directed, controlled, had the authority to control, or participated in the policies, acts, or practices of WSN, including the acts or practices alleged in [the] complaint." *Id*., ¶ 8. Robert and Robyn Held allegedly "participated in the advertising and marketing of products for [WSN]." *Id*., ¶¶ 7-8.

The claims in the Complaint are based on Defendants' advertising and promotion activities in connection with two of its products, The WSN® Diabetic Pack and The WSN® Insulin Resistance Pack. *Id*., ¶¶ 1, 10-19. The FTC alleges that Defendants have made false statements about these products in their marketing materials. *Id*., ¶¶ 25, 27. With respect to The WSN® Diabetic Pack, the FTC identifies the following statements made on the WSN website:

a. **Completely Natural!**
**Diabetes Breakthrough**

\* \* \*

Lower your blood sugar, safely and effectively with absolutely NO SIDE EFFECTS!! GUARANTEED!!

[Complaint,] Exhibit ("Ex.") A, p. 1 (Excerpt from website)

b. **Completely Natural!**
**Diabetes Breakthrough**

---

[1] The Court assumes the allegations in the complaint to be true for the purposes of this motion. *See Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 338 (9th Cir. 1996)(on motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court assumes the facts alleged in the complaint are true).

2

       \* \* \*

Maintain normal blood sugar levels, safely and effectively with absolutely NO SIDE EFFECTS!! GUARANTEED!!

[Complaint,] Ex. B, p. 1 (Excerpt from website)

c. Nobel Prize winning technology validates WSN® Diabetic Pack ingredients! Studies show a **31.9%** drop in blood sugar levels!

[Complaint,] Ex. A, p. 1 (Excerpt from website)

d. **The WSN® Diabetic Pack Breakthrough Benefits\* Include**:

- ✓ Lower Blood Glucose Levels
- ✓ Higher Energy Levels
- ✓ Easier Weight Loss
- ✓ Lower Cholesterol Levels
- ✓ Higher Quality of Sleep
- ✓ Less Dependency on Medications

[Complaint,] Ex. A, p. 2 (Excerpt from website)

e. **The WSN® Diabetic Pack Breakthrough Benefits Include**:

- ✓ Helps Maintain Normal Blood Glucose Levels
- ✓ Higher Energy Levels
- ✓ Lose Weight More Easily
- ✓ Helps Maintain Lower Cholesterol Levels
- ✓ Higher Quality of Sleep

[Complaint,] Ex. B, p. 2 (Excerpt from website)

f. The WSN® Diabetic Pack also contains important botanical extracts. A recent independent clinical trial was done on one of these herbal ingredients from this amazing product. This study was done on type 2 diabetics (mildly insulin dependent) and reported **an average drop of blood glucose levels of 31.9% and average weight loss of 4.8 pounds in just 30 days!**

[Complaint,] Ex. A, p. 2 (Excerpt from website)

g. **Nobel Prize** Winning Technology Validates WSN® Diabetic Pack Ingredients!

The good news is that cutting-edge science and nutrition have come together to create a truly monumental and natural breakthrough for diabetics.

Nobel Prize winning science and over 60 independent American university studies confirm the superiority of Foodform® [Diabetic Pack] nutrients.

The reason the WSN® Diabetic Pack works is because it operates at the cellular level and addresses a key problem that every type 2 diabetic has . . . All type 2 diabetics have a deficiency of key nutrients the body needs to support healthy blood sugar

3

levels.  Your cells simply do not process blood sugar like they should.  The WSN® Diabetic Pack helps your body metabolize blood sugar more efficiently.

[Complaint,] Ex. B, pp. 2-4 (Excerpt from website)

h. "My blood sugar went from 230 to 117 in just 21 days."  James Marshall, Georgia

[Complaint,] Ex. A, p. 1 (Excerpt from website)

i. **From Barbara Culver in Michigan**
"Well, just let me tell you this.  This is the first time that I have ever ordered a product that really did what it said it would do!

"I was taking 50 units of insulin plus pills twice a day and my blood sugar just kept going up.  I was tired all of the time and could fall asleep as soon as I sat down.  I also kept gaining weight.

"Since I've been using the Diabetic Pack I have lost 9 pounds, I have all kinds of energy and my sugar is down in the low 100s.  Also I don't take insulin any more!"

[Complaint,] Ex. B, pp. 3-4; Ex. A contains similar statements (Excerpt from website)

Complaint, ¶ 20.

With respect to The WSN® Insulin Resistance Pack, the FTC identifies the following statements made on the WSN website:

a. **Completely Natural!
Insulin Resistance Breakthrough**
(Also known as "Metabolic Syndrome" or "Syndrome X")

The WSN® Insulin Resistance Pack is a medical food specifically formulated for the dietary management of insulin resistance.

Reverse Insulin Resistance, safely and effectively with absolutely NO SIDE EFFECTS!! GUARANTEED!!

[Complaint,] Ex. C, p. 1 (Excerpt from website)

b. Nobel Prize winning technology validates WSN® Insulin Resistance Pack ingredients!

**The WSN® Insulin Resistance Pack Breakthrough Benefits* Include:**

✓ **Reduced Insulin Resistance**
✓ **Improved Utilization of Glucose**
✓ **Higher Energy Levels**
✓ **Easier Weight Loss**
✓ **Lower Cholesterol Levels**
✓ **Higher Quality of Sleep**

4

United States District Court
For the Northern District of California

✓ **Helps Prevent Diabetes**

[Complaint,] Ex. C, p. 1 (Excerpt from website)

 c. The WSN® Insulin Resistance Pack also contains important botanical extracts. A recent independent clinical trial was done on one of these herbal ingredients from this amazing product. This study was done on type 2 diabetes (mildly insulin dependent) and reported **an average drop of blood glucose levels of 31.9% and an average weight loss of 4.8 pounds in just 30 days!**

[Complaint,] Ex. C, p. 2 (Excerpt from website)

 d. Insulin resistance is a condition that if you don't take effective action against, it simply gets worse, and becomes type 2 diabetes. Unfortunately, medications only treat the symptoms and usually do nothing to address the underlying causes. The good news is that cutting-edge science and nutrition have come together to create a truly monumental and natural breakthrough for people who are **insulin resistant.**

**Nobel Prize Validates Amazing Technology**

Nobel Prize winning science and over 60 independent American university studies confirm the superiority of Foodform® [Insulin Resistance Pack] technology . . . Your cells are insensitive to insulin and simply do not process blood sugar like they should, and the WSN® Insulin Resistance Pack helps your body metabolize blood sugar more efficiently.

[Complaint,], Ex. C, p. 2 (Excerpt from website)

 e. The WSN® Insulin Resistance Pack is the most technologically advanced product of its kind available anywhere and was validated by the 1999 Nobel Prize for physiology.

[Complaint,] Ex. C, p. 3 (Excerpt from website)

Complaint, ¶ 21.

The FTC asserts two causes of action against Defendants, one based on Defendants' allegedly deceptive claims as to the WSN® Diabetic Pack, the other aimed at Defendants' allegedly deceptive claims as to the WSN® Insulin Resistance Pack. *Id*., ¶¶ 24-27.

In Count One, the FTC asserts that the statements quoted above about The WSN® Diabetic Pack represented that:

 a. [The WSN® Diabetic Pack] is an effective treatment for diabetes;

 b. [The WSN® Diabetic Pack] reduces or eliminates the need for insulin and other diabetes medications;

5

  c. Scientific studies prove that [The WSN® Diabetic Pack] is an effective treatment for diabetes; and

  d. [The] WSN® Diabetic Pack is clinically proven to cause an average drop in blood glucose levels of 31.9%.

*Id*., ¶ 24. The FTC further alleges that these representations "are false or were not substantiated at the time they were made," and therefore, that the making of these representations constituted a deceptive act or practice and false advertising, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52. *Id*., ¶ 25.

  In Count Two, the FTC asserts that the statements quoted above about The WSN® Insulin Resistance Pack represented that:

  a. [The WSN® Insulin Resistance Pack] reverses insulin resistance;

  b. [The WSN® Insulin Resistance Pack] manages insulin resistance;

  c. [The WSN® Insulin Resistance Pack] prevents diabetes;

  d. Scientific studies prove that [The WSN® Insulin Resistance Pack] is an effective treatment for insulin resistance; and

  e. [The WSN® Insulin Resistance Pack] is clinically proven to cause an average drop in blood glucose levels of 31.9%.

*Id*., ¶ 26. The FTC further alleges that these representations "are false or were not substantiated at the time they were made," and therefore, that the making of these representations constituted a deceptive act or practice and false advertising, in violation of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52. *Id*., ¶ 27.

  The FTC alleges that "[c]onsumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act" and that Defendants have been unjustly enriched as a result of the alleged conduct. *Id*., ¶ 28. The FTC requests a permanent injunction to prevent further violations of the FTC Act, as well as other relief "as the Court finds necessary to redress injury to consumers . . . including, but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies." *Id*., Prayer.

### B. The Motion to Dismiss

In the Motion, Defendants assert that the FTC's claims sound in fraud and therefore, that the heightened pleading requirement of Rule 9(b) of the Federal Rules of Civil Procedure applies. Motion at 3-6 (citing *FTC v. Swish Marketing*, 2010 WL 653486 (N.D. Cal. Feb. 22, 2010) & *FTC v. Benning*, 2010 WL 2605178 (N.D. Cal. June 28, 2010)). Defendants further argue that the FTC's allegations fail to satisfy this standard as to the corporate defendant because the complaint:

> contains no explanation of 1) why the Defendants' advertising is false; 2) what statements about the Defendants' products would be considered true by the FTC, 3) the standard by which the FTC evaluates truth and falsity, 4) how the Defendants' advertisements should be substantiated, or 5) the standard by which the FTC evaluates substantiation.

Motion at 6. Defendants contend that the Complaint is "even more deficient as it relates to the individual defendants." *Id*. According to Defendants, the FTC's conclusory allegations relating to Robert and Robyn Held are not sufficient to establish "knowledge that the corporation or one of its agents engaged in dishonest or fraudulent conduct," as is required to recover restitution from an individual based on violation of Section 5 of the FTC Act. *Id*. at 7 (citing *FTC v. Swish Marketing*, 2010 WL 653486, at *3 (N.D. Cal. Feb. 22, 2010)). Finally, Defendants assert that even if Rule 9(b) does not apply to the FTC's claims, its claims fail under Rule 8(a) under the standard set forth by the Supreme Court in *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), which requires that a complaint include sufficient factual allegations in support of a claim to render it "facially plausible." Motion at 8.

The FTC asserts that its allegations are sufficient, regardless of whether its claims are governed by Rule 8(a) or Rule 9(b) of the Federal Rules of Civil Procedure. Opposition at 2. As to the corporate Defendant, the FTC argues that it is required under Rule 9(b), if it applies, to allege the "who, what, where, and how" of its claims and that it has satisfied this requirement by identifying in its complaint specific statements made on WSN's website relating to the products described above. Opposition at 7-8. The FTC rejects Defendants' argument that it was required to set forth facts showing *why* the statements were false or how they should have been substantiated, asserting that there is no authority that supports such pleading requirements. *Id*. at 8.

With respect to the individual defendants, the FTC argues that its allegations are sufficient to satisfy Rule 9(b) as well, both as to injunctive relief and monetary relief. According to the FTC, in order to hold an individual liable for injunctive relief, the FTC is only required to demonstrate that the individual defendant "either directly participated in or had the authority to control the deceptive acts of the corporate defendants." *Id*. at 9 (citing *FTC v. Publishing Clearing House*, 104 F.3d 1168, 1170 (9th Cir. 1997)). To hold an individual liable for monetary damages, according to the FTC, it must show that the individual defendant "had actual knowledge of material representations, [was] recklessly indifferent to the truth or falsity of a misrepresentation, or had an awareness of a high probability of fraud along with an intentional avoidance of the truth." *Id*. (citing *FTC v. Publishing Clearing House*, 104 F.3d at 1171). According to the FTC, it has satisfied both standards by alleging that Robert and Robyn Held "participated in" WSN's alleged violations of the FTC Act. *Id*. at 10. The FTC also points to allegations that WSN is a closely held corporation, that Robert Held is its CEO and that Robyn Held is an officer of the corporation. *Id.* The FTC further notes that the statements identified in the complaint were purportedly made by "Bob Held," as can be seen in the exhibits attached to the complaint. *Id*. (citing Complaint, Ex. A at 6, Ex. B at 7 & Ex. C at 5). According to the FTC, these allegations are sufficient to "give rise to the reasonable presumption that Robert and Robyn Held participated in *and* had the authority to control the corporate defendant." *Id*.

The FTC further asserts that Rule 9(b) does not apply to claims asserted under the FTC Act based on alleged deceptive acts and practices because such a claim does not sound in fraud. *Id*. at 13. In particular, the FTC asserts that while traditional elements of fraud include knowledge that a representation was false when made, intent to deceive and justifiable reliance on the representation, these elements need not be established to prevail on a claim for deceptive practices under the FTC Act. *Id*. at 13-14. On this basis, according to the FTC, many courts have held that Rule 9(b) does not apply to Section 5 claims. *Id*. at 12-13 (citing cases).

Finally, the FTC argues that the allegations in the Complaint are sufficient to satisfy the pleading requirements of Rule 8(a) as to all Defendants. *Id*. at 15-18. In particular, according to

8

Plaintiff, the complaint alleges that Sections 5 and 12 were violated because WSN made claims about their products that were false or were not substantiated and also includes allegations sufficient to give rise to individual liability on the part of Robert and Robyn Held. *Id*. at 18.

## III.   ANALYSIS

### A.   Legal Standard

#### 1.   Rule 12(b)(6)

A complaint may be dismissed for failure to state a claim for which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that "[a] pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12, the court analyzes the complaint and takes "all allegations of material fact as true and construe(s) them in the lights most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington,* 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). The factual allegations must be definite enough to "raise a right to relief above the speculative level." *Id*. at 555. However, a complaint does not need detailed factual allegations to survive dismissal. *Id*. Rather, a complaint need only include enough facts to state a claim that is "plausible on its face." *Id*. at 570. That is, the pleadings must contain factual allegations "plausibly suggesting (not merely consistent with)" a right to relief. *Id*. at 1557 (noting that this requirement is consistent with Fed. R. Civ. P. 8(a)(2), which requires that the pleadings demonstrate that "the pleader is entitled to relief").

United States District Court
For the Northern District of California

### 2. Rule 9(b)

Rule 9(b) of the Federal Rules of Civil Procedure provides as follows:

> Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed. R. Civ. P. 9(b). "Rule 9(b) applies when (1) a complaint specifically alleges fraud as an essential element of a claim, (2) when the claim 'sounds in fraud' by alleging that the defendant engaged in fraudulent conduct, but the claim itself does not contain fraud as an essential element, and (3) to any allegations of fraudulent conduct, even when none of the claims in the complaint 'sound in fraud.'" *Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp.2d 1073, 1089-1090 (C.D. Cal. 2009) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102-06 (9th Cir. 2003)). To satisfy Rule 9(b), the plaintiff must include "the who, what, when, where, and how" of the fraud. *Vess*, 317 F.3d at 1106 (citations omitted). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Decker v. Glenfed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994). A claim for fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

### 3. Sections 5 and 12 of the FTC Act

Section 5(a) of the FTC Act declares unlawful "unfair or deceptive acts or practices in or affecting commerce." 15 U.S.C. § 45(a). Section 12 of the FTC Act prohibits the dissemination of "any false advertisement" in order to induce the purchase of "food, drugs, devices, or cosmetics." 15 U.S.C. § 52(a)(2). It also provides that the dissemination of any such false advertisement is an "unfair or deceptive act or practice in or affecting commerce" within the meaning of section 5. 15 U.S.C. § 52(b). An advertisement is deceptive and misleading under Sections 5 and 12 of the FTC Act where 1) there is a representation, omission or practice that 2) is likely to mislead consumers acting reasonably under the circumstances, and 3) the representation, omission or practice was

material. *FTC v. Pantron I Corp.*, 33 F.3d 1088, 1095 (9th Cir. 1994) (citing *In re Cliffdale Assocs., Inc.*, 103 F.T.C. 110, 163-64 (1984)).

An individual may be held liable for injunctive relief under the FTC Act on the basis of corporate acts or practices where: "1) . . . corporation committed misrepresentations or omissions of a kind usually relied on by a reasonably prudent person, resulting in consumer injury, and 2) . . .[the individual] participated directly in the acts or practices or had authority to control them." *FTC v. Publishing Clearing House*, 104 F.3d 1168, 1170 (9th Cir. 1997). To hold an individual liable for restitution on the basis of a violation of the FTC Act by the corporation, the FTC must also show that the individual had knowledge of the deception. *Id*. at 1171. To satisfy this requirement, the FTC must show that the individual "had actual knowledge of material misrepresentations, [was] recklessly indifferent to the truth or falsity of a misrepresentation, or had an awareness of a high probability of fraud along with an intentional avoidance of the truth." *Id*. (quoting *FTC v. American Standard Credit Systems, Inc.*, 874 F. Supp. 1080, 1087 (C.D. Cal. 1994)). The FTC is not required to show, however, that an individual *intended* to defraud consumers in order to establish personal liability. *Id*.

### B. Whether Rule 9(b) or 8(a) Applies to the FTC's Claims

Whether or not the heightened pleading standard set forth in Rule 9(b) applies to deceptive practices claims under Sections 5 and 12 of the FTC Act is a question that has not been resolved in the Ninth Circuit. In other circuits, courts have declined to apply Rule 9(b) to deceptive practices claims under the FTC Act on the basis that such claims do not require proof of scienter, reliance or injury and therefore are not fraud claims. *See, e.g., FTC v. Freecom Communications, Inc.*,401 F.3d 1192, 1204 n. 7 (10th Cir. 2005) (holding that Rule 9(b) does not apply to Section 5 claims because "such claims do not require proof of scienter, reliance or injury and therefore are not fraud claims"); *FTC v. Innovative Marketing, Inc.*, 654 F.Supp.2d 378, 388 (D.Md., 2009) (holding based on *Freecom* that Rule 9(b) does not apply to Section 5 claims, without discussion); *F.T.C. v. Medical Billers Network, Inc.*, 543 F. Supp.2d 283, 314 (S.D.N.Y., 2008) (holding that Rule 9(b) does not

11

apply to Section 5 claims because such claims do not require proof of scienter, reliance or injury and therefore are not fraud claims).

Some district courts in the Ninth Circuit, however, have reached the opposite conclusion, reasoning that under *Vess v.Ciba-Geigy Corp. USA*, Rule 9(b) applies not only to fraud claims but also to claims that "sound in fraud" by alleging that the defendant engaged in fraudulent conduct. *See FTC v. Lights of America, Inc.*, 2010 WL 5564048 (C.D.Cal. Dec. 17, 2010). In *Lights of America*, the FTC alleged that the defendants "distributed promotional materials that made specific representations about the watt equivalency, lumen output, and life spans of their LED lamps, that these representations were 'false or not substantiated,' and that the [defendants] 'knew or should have known that their conduct was unfair or deceptive.'" *Id*. at * 3. Because the FTC alleged a "unified course of fraudulent conduct and relie[d] entirely on that course of conduct as the basis of its claim," the court explained, the FTC's claims in that case sounded in fraud and were governed by the heightened pleading standard of Rule 9(b). *Id*. In support of its conclusion, the court also relied on cases holding that Rule 9(b) applies to claims for negligent misrepresentation, even though scienter need not be shown to prevail on such a claim. *Id*. at *4 (citing *Nielsen v Union Bank of California*, 290 F. Supp. 1101, 1141 (C.D.Cal. 2003) ("It is well-established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements"). The court in *Lights of America* also cited to the *Swish Marketing* decision cited by Defendants in their Motion. *Id*. (citing *FTC v. Swish Marketing*, 2010 WL 653486 (N.D. Cal. Feb. 22, 2010)).

In *Swish Marketing*, the FTC alleged that a corporate defendant, Swish Marketing, engaged in a fraudulent credit card scheme, in violation of Section 5 of the FTC Act, and that individual defendant Mark Benning, who was CEO of Swish Marketing, controlled, had the authority to control, or participated in the deceptive acts of the corporation. 2010 WL 653486, at * 1, 4 (N.D. Cal. Feb. 22, 2010). In a motion to dismiss, the defendants asserted that the FTC's claims against Benning were governed by Rule 9(b) and that the FTC's allegations failed to meet this standard. *Id*. at * 1. Although the court ultimately found that it was not required to rule on this question because

12

even the lower pleading standard set forth in Rule 8(a) was not met, it was sympathetic to the defendants' positions, reasoning as follows:

> . . . courts in this circuit have required heightened pleading even where a plaintiff neither needed to prove nor alleged all elements of common law fraud. *See, e.g., Asis Internet Services v. Subscriberbase, Inc*., No. 09-3503, slip op. at *3 (N.D. Cal. Dec. 04, 2009) (acknowledging that plaintiffs could not make out all elements of common law fraud but requiring that they satisfy Rule 9(b)'s heightened requirements where allegations under California's False Advertising Law were nonetheless "grounded in fraud"); *In re Actimmune Mktg.*, No. 08-02376, slip op. at *8 (N.D. Cal. Nov. 6, 2009) (finding that even though plaintiff's fraudulent business practices claim under the UCL did not require a showing of actual fraud, it still "sounded" in it). Similarly, the D.C. Circuit in *United States of America ex rel. Totten v. Bombardier Corporation*, 286 F.3d 542, 551-52 (D.C. Cir.2002) termed the distinction, for Rule 9(b) purposes, between a fraudulent claim and a false one "hairsplitting." . . .
>
> Here, the Commission's burden of proof resembles one for common law fraud except that it need not demonstrate Benning's subjective intent to defraud. *FTC v. Publishing Clearing House, Inc*., 104 F.3d 1168, 1171 (9th Cir.1996)....
>
> As Rule 9(b) particularity is not focused on intent, it would be anomalous to suggest that a section 5 claim is free from Rule 9(b)'s heightened pleading requirement because the FTC need not prove scienter here. The gravamen of the Complaint is that Swish and its agents-motivated by the potential to profit-hoodwinked unwitting loan applicants by inducing payment for a $50 debit card they neither wanted nor considered. The general applicability of Rule 9(b) to section 5 actions is a real prospect.

*Id*. at * 3. The court went on to hold, however, that the allegations as to Benning were too conclusory to satisfy even Rule 8(a)'s lower pleading standard, noting that aside from the conclusory allegations of control, the only fact alleged was Benning's position as CEO. *Id*. at * 5. The Court concluded that "[t]he Commission's conclusory assertions of authority – untethered to virtually any supportive facts – do not support an inference of Benning's involvement." *Id*. Similarly, the court found that the conclusory allegations in the complaint were insufficient to support a plausible inference that Benning had knowledge of the alleged deceptive acts. *Id*. Accordingly, the court dismissed the Section 5 claim against Benning for failure to state a claim under Rule 12(b)(6). *Id*.

Although the Court finds the reasoning in the *Swish Marketing* case to be persuasive, it need not decide whether or not Rule 9(b) applies here because, for the reasons stated below, the allegations against the corporation and Robert Held are sufficient under either standard. As to Robyn Held, on the other hand, the allegations are insufficient under even the minimal standards of Rule 8(a).

13

### C. Sufficiency of Allegations as to WSN

As discussed above, to satisfy Rule 9(b), a complaint must allege the "who, what where and how" of the conduct at issue. *Vess*, 317 F.3d at 1106. As to WSN, these requirements are satisfied. The FTC has identified in detail the statements that it alleges are deceptive. Complaint, ¶¶ 20-21. It has provided print-outs showing the statements as they appeared on WSN's website, with the dates on which the statements appeared on the website. *See* Complaint, Exs. A-C. It has included allegations stating the nature of the misrepresentations alleged, *see* Complaint ¶¶ 24, 26, and has alleged that the statements were false or were unsubstantiated at the time they were made. *Id*. at ¶¶ 25, 27. The Court concludes that these allegations are sufficient to meet the pleading requirements of Rule 9(b) (and thus, the requirements of Rule 8(a) as well).

The Court rejects Defendants' assertions that the FTC was required to include allegations identifying the level of substantiation that would have been required or the standard for determining whether the statements were true or false. Defendants have cited no authority in support of these assertions and the Court does not find any. Therefore, the Motion is DENIED as to the FTC's claims against WSN.

### D. Sufficiency of Allegations as to Individual Defendants

#### 1. Robert Held

Assuming that Rule 9(b) applies to the claims against Robert Held, the Court finds that the allegations are sufficient to state a claim, whether for injunctive relief or for restitution. To hold Robert Held individually liable for injunctive relief under Section 5, the FTC must establish that he participated directly in the acts or practices or had authority to control them, while a claim for restitution requires that the FTC demonstrate that Robert Held had knowledge of the deception. As discussed above, Rule 9(b)'s particularity requirement is met to the extent that the who, what, where and how are sufficiently alleged. The Complaint also alleges that Robert Held was the president and owner of WSN, that WSN was a closely held corporation, and that he controlled, had the authority to control or participated in advertising and marketing, including the acts and practices of WSN alleged in the complaint. Complaint, ¶ 7. While these factual allegations are somewhat thin, they are

14

distinguishable from the facts in *Swish Marketing* to the extent that in this case, the corporate defendant is alleged to be closely held and Robert Held is alleged to be the owner of the corporation.[2] The Court finds further support for its conclusion in the exhibits to the complaint, which reveal that the statements that the FTC alleges are deceptive are attributed to Robert Held. These specific facts link Robert Held to the FTC's claims against him and support a plausible inference that he participated in and had knowledge of the alleged misrepresentations. Therefore, the Motion is DENIED as to the claims against Robert Held.

### 2. Robyn Held

In contrast to the allegations about Robert Held, the allegations against Robyn Held are so conclusory that they do not support a plausible inference that she participated directly in the alleged deceptive acts, controlled or had authority to control them or had knowledge of them. Indeed, the only factual allegation (aside from the boilerplate allegations that simply restate the legal standard) about Robyn Held is that she was an officer of WSN. That allegation does not meet the requirements of Rule 8(a) under *Twombley*. Therefore, the Motion is GRANTED as to the FTC's claims against Robyn Held, which are dismissed with leave to amend.

## IV. CONCLUSION

For the reasons stated above, the Motion is DENIED as to the FTC's claims against WSN and Robert Held. The Motion is GRANTED as to Defendant Robyn Held. The FTC's claims against Robyn Held are dismissed with leave to amend within thirty (30) days of this Order.

IT IS SO ORDERED.

Dated: April 4, 2011

JOSEPH C. SPERO
United States Magistrate Judge

---

[2] The Court notes that in a subsequent decision ruling on the sufficiency of the FTC's amended complaint in the *Swish Marketing* litigation, the court pointed to new allegations that Swish was a closely held corporation with fewer than 25 employees and that Benning had a 30% interest in the corporation in support of its conclusion that the FTC had adequately pleaded its Section 5 claim. *See FTC v. Benning*, 2010 WL 2605178, at * 2 (N.D. Cal. June 28, 2010).

15